## FRIENDSVIEW MANOR v. STATE TAX COMMISSION

G. Bernard Fedde, Portland, argued the cause for plaintiff.

Gerald F. Bartz, Assistant Attorney General, Salem, argued cause for defendant.

Decision for defendant rendered March 19, 1965.

EDWARD H. HOWELL, Judge.

Plaintiff appeals from an order of the defendant State Tax Commission denying a real property exemption for 1961 and 1962.

Plaintiff owns and operates a retirement home for the aged and contends that it is exempt from taxation under ORS 307.130. This statute generally provides that property owned by incorporated literary, benevolent, charitable and scientific institutions, and actually and exclusively occupied or used in the work carried on by them is exempt from taxation.

Other procedural questions are raised but the main

issue is whether plaintiff is a charitable institution. A decision against the plaintiff on this issue will determine the entire case.

Plaintiff was incorporated in November, 1956, as a nonprofit religious and charitable corporation. The first resident moved into the Manor in March, 1961. A founder's fee of $5,000 was charged. This was later raised to a maximum of $8,500 depending on the room. A monthly fee of $85 was charged each resident.

The incorporators planned to pay for the Manor through the founder's fees, the monthly charges, gifts and contributions.[1] Their agreement with the residents provided that the apartment would be resold in the event of the death of the founder. There were no restrictions in race, color or creed and the residents must be 65 years or older. The Manor would accommodate about 150 persons.

The Board of Directors, at the start, allocated two of the 125 rooms for charity residents. It was also planned that every 20th room would be set aside on the basis of need. In addition, the first $100 of each founder's fee was credited to a charitable fund. This fund originated from contributions from individuals and from the church when the Manor was being started.

■ The law in Oregon of strict construction against exemptions of this nature has been so well established that it needs no citation.

The Supreme Court of Oregon had occasion to pass upon the eligibility of geriatric homes for property tax

---

[1] Originally the incorporators did not plan to operate the Manor as a charity. The minutes of one of the early meetings state:

"In view of the fact that the persons who are poor financially may have State Aid, it is not our thought that the Home be on a charity basis but it be self-supporting."

exemption as charitable institutions in the case of *Methodist Homes, Inc. v. Tax Com.*, 226 Or 298, 360 P2d 293, (1961). In that case Mr. Justice WARNER set forth various tests. The plaintiff in this case is credited with passing many of the qualifications mentioned:

The monthly receipts from the Manor are applied to its upkeep, maintenance and equipment. The founder's fees were used for the construction and equipment of the Manor.

All of the residents receive the same treatment in the Manor, whether they are a completely paying resident or receiving some or all charity. There is no discrimination as to race, color or creed.

There is a charitable trust fund and donations are solicited and received for such fund. The fund is kept separately from other accounts.

The institution operates without profit to the founders and officials. The Manor has, in fact, been operating at a loss. The Board of Directors receives no compensation and the manager receives a nominal salary.

The Articles of Incorporation, as amended in June, 1961, provide that all the property is dedicated in perpetuity to charitable purposes and on liquidation no assets will inure to the benefit of any private person. All surplus assets will be paid to Friend's Church for a home for the aged.

■ While the plaintiff is able to meet many of the tests set forth in the *Methodist Home* case, yet, in order for a charitable institution to be exempt "it must actually dispense charity." *Fredericika Home for the Aged v. San Diego County*, 35 Cal App2d 789, 221 P2d 68 (1950).

As previously mentioned, two of the 125 rooms were originally allocated to charity residents. Later it was agreed to set aside every 20th living unit, as

vacancies occur, for charitable use. If a resident could pay only part of the founder's fee and monthly charge, then the resident may or may not be accepted depending on the facts of the case and condition of the charity fund. A completely indigent person may or may not be admitted depending on the available funds.

Although the manager testified they would make every attempt not to do so, under the by-laws and the agreement, there is nothing to prevent the directors from removing a resident if he could not pay the monthly charges.

In 1961, $19,000 in charitable assistance was given to nine residents. Almost all of this represented help in paying the founder's fee. In 1962, a $6,500 donation on a founder's fee was given to one person and another $600 was advanced for help on the monthly charges.

Considering all the facts, it would appear that the plaintiff is not exempt as a charitable institution. It has to depend primarily on residents who are able to pay in order to remain in operation.

The expenditure in 1961 of $19,000 for charity as compared to receipts of over $300,000 in founder's fees, not counting the monthly receipts, the allocation of two rooms out of 125; the partial assistance to 9 of 103 people and, in 1962, the payment of one founder's fee of $6,500 and $600 in monthly fees when the Manor was close to capacity, is not sufficient dedication to charitable use to qualify plaintiff for an exemption under the statute.